| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

| | |  | |
|---|---|---|---|
| The United States of America, | § § § | | |
| Plaintiff, | § § | | |
| versus | § § | Criminal H-12-693 | |
| Jonathan Patrick Blevins, | § § § | | |
| Defendant. | § | | |

## Opinion on Suppression

1. *Introduction.*

Five armed police officers searched a man's home without a warrant and interrogated him without advising him of his rights. Because the search and interrogation offend the Constitution, the evidence will be suppressed.

2. *Background.*

In 2009, five policemen questioned Jonathan Blevins and searched his home. The police were interested in him because a woman told the National Center for Missing and Exploited Children in May of 2009 that he had sexually assaulted kids in her family more than a decade earlier.

In 2003, a similar complaint was made to the Huntsville Police Department. In response, Huntsville police interviewed Blevins's nephew. The nephew said that Blevins showed him images of child pornography that June. Blevins was not charged.

After the 2009 "tip," officers with the Texas Attorney General met with Huntsville detectives about the 2003 incident. The state agents did not interview Blevins's nephew or the source of the tip. Intent on speaking with Blevins immediately, they got a search warrant from Judge Keith Keeling in the Texas District Court.

With their warrant and guns, five officers in two police cars went to a home that Blevins shared with his parents. It was in the woods. They parked their cars to prevent anyone from leaving by car. Rather than use the warrant, they spoke with his brother in the front yard who

immediately told them that he did not live there. The government falsely asserts that the brother took the officers to the front door where Blevins's parents invited them into the home. The audiotape confirms that the officers entered Blevins's home after they asked his brother, "may we step in with you?" The brother – neither a resident nor owner of the home – consented to their entry. The officers spoke with his parents only after coming inside.

When the officers entered his house, Blevins was asleep in his room. The government says that his parents woke him up. Blevins says that the officers did. The audiotape is not clear. Either way, the officers immediately asked him for consent to search his room. In his groggy state, he permitted the search. It yielded evidence that the United States intends to use at trial.

Within minutes of being awake, the officers escorted Blevins to the front porch for an hour or more of questioning. The officers did not inform him of his rights, allow him to change clothes, drink water, or put in his dentures. Although the government now admits that it did not advise him of his rights, Lieutenant Jay Meadors of Texas falsely swore to Walker County in a 2009 criminal complaint that he had warned him.

Blevins has moved to suppress the physical evidence that Texas found and his statements to the officers during the interrogation.

3. *Telling Citizens Their Rights.*

The Constitution insists that no person may be compelled to be a witness against himself in a criminal case.[1] When a suspect is in custody, his statements may not be used against him unless the government has explained his right not to talk to the officers.[2] Without a simple warning, the right declared in Text would be lost in the reality of streets, buses, and porches.

The government says that it was not required to read Blevins his rights because he was not in "custody" when he was interrogated on the porch. Its claim is illustrative of what sometimes passes for law enforcement. A mentally challenged man is awakened by five armed officers, taken to the porch, not allowed to dress, not allowed to drink. The patrol cars blocked the driveway. He was not free to do anything. The government of the United States has adopted these officers as its own, given them its approval, and offered them in court. It says that he was not free to get his teeth, but he was free to walk away. Rank dishonesty.

---

[1] U.S. Const. amend. V.

[2] Miranda v. Arizona, 384 U.S. 436, 444 (1966).

A person is in "custody" – as that term is used by lawyers – if a reasonable person would have thought that he was not at liberty to stop the interrogation and leave.[3] Blevins says that he did not think he was free to leave. He was standing on his front porch in his pajamas. One of the officers, Sergeant Eric Scott, confirmed that he was not free:

> Well, obviously, if he starts walking to the woods, we would be concerned about why he would be walking into the woods. Is he going to get a weapon and come back to assault us?

Scott admitted that he had never had a single suspect leave in this situation – by wandering off or calling a cab, for instance. When five armed officers surround you and your home, no sane person feels free to leave. Often, attempting to leave generates an arrest for evading an officer.

4. *Secondary Search.*

If an unconstitutional search results in information that later leads to more evidence, the derivative evidence is inadmissible.[4] When the government violates the Constitution, it may not use information that it should not have received to find more evidence. The illegal search taints its derivative searches.

Allowing the government to use forbidden information to further intrude into a defendant's life would reduce the Fourth Amendment to an empty gesture. The government could always use the products of its illegal search to "discover" corroborating evidence.

If the government does not inform a defendant of his rights before interrogating him, it may not directly use his confession or other admissions at trial.[5] Some courts have said that not reading a defendant his rights does not taint evidence derived from the illegal interrogation.[6] According to these courts, it is permissible for the government to violate the law to find a lawbreaker.

The Constitution is not about policies; it is about limits on governmental power. The restriction of seizures applies only to governments. Courts occasionally articulate ways of

---

[3] Thompson v. Keohane, 516 U.S. 99, 112 (1995).

[4] Silverthorne Lumber Co. v. United States, 251 U.S. 385, 391–92 (1920).

[5] *See* Miranda, 384 U.S. at 444; U.S. Const. amend V.

[6] Oregon v. Elstad, 470 U.S. 298, 304 (1985).

approaching constitutional application in a class of circumstances. If this paradigm is not consistent with the Constitution, if it erodes its effectiveness, it is wrong.[7]

Long before the Supreme Court's decision in 1962, the Federal Bureau of Investigation and the Royal Canadian Mounted Police warned those whom they had stopped of their right to remain silent. The Constitution insists that no person may be compelled to be a witness against himself in a criminal case; that right works in harmony with his right to be free of unreasonable searches. Evidence that the government found by exploiting the products of its illegal interrogation will be suppressed.

5.   *Warrantless Entry.*

The Constitution secures people against unreasonable searches and seizures in their houses, papers, and effects.[8] Frustrated by the abuses of Hanoverian kings, the Framers designed the Fourth Amendment to protect people from governmental intrusion into their homes, luggage, books, and similar debris of a free man's life. This protection is at its strongest when a man has retreated into his own home to be free from the expanding gunmen of the state.[9]

A warrantless search of a home is presumptively unreasonable.[10] Although the officers who went to Blevins's home had a warrant, they did not use it – suggesting that they knew it had been obtained with perjury. The government nevertheless says that its entry into his home was reasonable because it was invited.

A warrant is not required if the person being searched consents. A third party with common authority over your home may sometimes consent to a search for you.[11] The government can rely on third-party consent if it was reasonable for it to believe that the consenting party had common authority over the property.[12]

---

[7] *Cf.* United States v. Cherry, 759 F.2d 1196, 1208–1210 (5th Cir. 1985).

[8] U.S. Const. amend IV.

[9] Groh v. Ramirez, 540 U.S. 551, 559 (2004).

[10] Payton v. New York, 445 U.S. 573, 586 (1980).

[11] United States v. Matlock, 415 U.S. 164, 171 (1974).

[12] Illinois v. Rodriguez, 497 U.S. 177, 188 (1990).

On the audio recording, the police first encountered Blevins's brother outside. He immediately told them he did not live there. The officers nevertheless asked the brother if they could "step in with [him]." He says, "Sure." On the tape, the officers did not speak with Blevins's parents until after noises consistent with a door opening and closing.

It was wholly unreasonable for the officers to rely on the consent of a person who told them he did not live at the house. After they were inside, the officers did not ask the parents for permission to be there. Instead, they began their illegal search.

Physical evidence obtained from the home will be suppressed because the government's search was warantless and unreasonable.

6. *Involuntariness.*

Putting aside the government's warrantless entry and failure to notify Blevins of his rights, his statements and consent to being searched were involuntary. He is a troubled person who seems to have serious mental impairments. When the interrogation began, he had only been awake for minutes. Before going to sleep, he had taken prescription sleep medications.

7. *Conclusion.*

Statements made by Blevins during the custodial interrogation will be suppressed because the government did not inform him of his rights. Physical evidence obtained from the home will be suppressed because the government's search was warantless and unreasonable. Evidence or statements that were later discovered because of the search or interrogation will also be suppressed as a direct consequence of the officers' ignoring the limits on their authority – fruit of poisonous practices.

Signed on August 12, 2014, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge